

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
        **JUDGE**

## LETTER OPINION

January 4, 2012

Charles R. Virginia
Virginia & Ambinder, LLP
111 Broadway, 14th Floor
New York, NY 10006
   *(Attorney for Plaintiffs)*

   RE:   *Trustees of the Local 7 Tile Industry Welfare Fund, et al. v. Giacomelli Tile, Inc., et al.*
         <u>Civil Action No. 11-01846 (WJM)</u>

Dear Counsel:

   This matter comes before the Court on Plaintiffs' motion for default judgment. There was no oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, Plaintiffs' motion is **GRANTED**.

**I.   BACKGROUND**

   The following facts are established by the Complaint, the motion for default judgment, and the exhibits attached thereto. Plaintiffs are the trustees of the Local 7 Tile Industry Welfare Fund, the Local 7 Tile Industry Annuity Fund, and the Tile Layers Local Union 52 Pension Fund (collectively, the "Local Funds") and the trustees of the Bricklayers & Trowel Trades International Pension Fund and the International Masonry Institute (collectively, the "International Funds") (the Local Funds and International Funds shall be referred to collectively as the "Funds"). Defendants are a tile installation contractor, Giacomelli Tile, Inc. ("GTI"); its owner Warren Giacomelli; and two tile installation companies, Colvere Tile, Inc. ("Colvere") and J&J Tile, Inc. ("J&J").

   At all relevant times, GTI was a party to a collective bargaining agreement (the "CBA") with the Tile Setters and Tile Finishers Union of New York and New Jersey,

1

Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Union").  Declaration of Christopher Guy ("Guy Decl.") ¶ 2, ECF No. 9-1.  The CBA required GTI to make certain monetary contributions to the Funds for all work performed in the trade and geographical jurisdiction of the Union ("Covered Work").  Guy Decl. ¶ 3.  Since 2005, there have been two audits of GTI's books and records.  The first audit covered the period of January 1, 2005 through June 30, 2006,[1] and the second audit covered the period of July 1, 2006 through December 31, 2009 (collectively, the "Audits").  Declaration of Fred Moss ("Moss Decl.") ¶¶ 3-4, ECF No. 9-2.  The Audits revealed that GTI had failed to make $144,907.93 in required contributions to the Funds.  Moss Decl. ¶¶ 6-7.

Plaintiffs commenced this action on March 31, 2011.  Compl., ECF No. 1.  On April 8, 2011, Plaintiffs' agent served three Summonses and three copies of the Complaint to Michelle Nallen, the managing agent of GTI, Colvere, and J&J.  *See* ECF Nos. 3, 5-6.  On April 8, 2011, Plaintiffs' agent also served a Summons and Complaint to Warren Giacomelli, by serving Raya Sorane, a household member of suitable age and discretion residing in the usual place of abode of Mr. Giacomelli.  *See* ECF No. 4.  Defendants were required to file an Answer or otherwise move with respect to the Complaint no later than April 29, 2011.  Fed. R. Civ. P. 12(a)(1)(A)(i).  To date, all four Defendants have failed to answer or otherwise respond to the Complaint.  Accordingly, the Clerk entered a Default against Defendants on May 6, 2011.  Clerk's Entry of Default, ECF No. 8.  Plaintiffs filed the instant motion for default judgment on October 17, 2011.  This motion was served on October 17, 2011.  Cert. of Service, ECF No. 10.  To date, no opposition has been filed.

## II.   DISCUSSION

### A.   Standard of Review

Federal Rule of Civil Procedure 55 governs default.  After the Clerk's entry of default pursuant to Rule 55(a), a plaintiff may then seek the Court's entry of default pursuant to Rule 55(b)(2).  *See Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).  "Before imposing the extreme sanction of default, district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default."  *Id.* (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).  To make these determinations, the Court should accept as true the well-pleaded factual allegations of the complaint, although the Court need not accept the moving party's legal conclusions or allegations relating to the amount of damages.  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.1990); *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008).

---

[1] The first audit covered the period of January 1, 2003 through June 30, 2006; however, Plaintiffs are only seeking contributions under the first audit from January 1, 2005 through June 30, 2006.

B.     **Default Judgment is Appropriate**

After review of the record, the Court determines that Plaintiffs have satisfied the requirements for default judgment. The record shows that Defendants have been properly served pursuant to Federal Rules of Civil Procedure 4(h)(1)(B) and 4(e)(2)(B). *See* ECF Nos. 3-6. Defendants have failed to respond to the Complaint and the deadline for answering the Complaint or filing a responsive motion has passed. *See* Clerk's Entry of Default, ECF No. 8. When a defendant has "failed to answer, move, or otherwise respond to the complaint, the entry of a default judgment against him is appropriate." *See Palmer v. Slaughter*, No. 99-899, 2000 U.S. Dist. LEXIS 22118, 2000 WL 1010261, at *2 (D. Del. July 13, 2000).

An analysis of the *Doug Brady* factors compels an entry of default judgment. First, review of the record reveals that Plaintiffs have a legitimate cause of action and none of the four Defendants has a meritorious defense. GTI was contractually and legally obligated to contribute to the Funds during the time periods covered by the Audits. *See* Exhibit A, GTI CBA, Article IX Section III, ECF No. 9-5; 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."). The findings of the Audits determined that GTI failed to make contributions in the principal amount of $144,907.93, Moss Decl. ¶¶ 6-7, meaning that GTI failed to make the required contributions in accordance with its contractual obligations. Thus, GTI is liable to the Funds under the CBA and ERISA.

Colvere and J&J are liable for GTI's contributions because they are the alter-egos of GTI. "In order to decide if two facially independent employers are alter egos, [a court] considers whether the two entities have substantially identical ownership, management, supervision, business purposes, operation, equipment and premises, and customers." *Trafford Distrib. Ctr. v. NLRB*, 478 F.3d 172, 176 (3d Cir. 2007) (quoting *Crawford Door Sales Co.*, 226 N.L.R.B. 1144 (1976)). GTI, Colvere, and J&J are all tile installation businesses. Guy Decl. ¶ 9. Four out of five of GTI's employees work for Colvere. *See* Exhibit F, ECF No. 9-10; Exhibit H, ECF No. 9-12. Warren Giacomelli explicitly told the trustees of the Funds that he and his family had formed a new company, Colvere, to perform tile installation work after GTI ceased operations in January 2009. Guy Decl. ¶ 8. Michelle Nallen, Mr. Giacomelli's sister, is the President and sole officer of Colvere and J&J, has held herself out as a representative of GTI and Colvere, and executed a separate collective bargaining agreement with the Union as President of Colvere. Guy Decl. ¶ 9; Exhibits C-E, L-M, ECF Nos. 9-7, 9-8, 9-9, 9-16, 9-17. Robert A. Schandler is the sole Agent for both Colvere and J&J. Exhibits L-M, ECF Nos. 9-16, 9-17. Based on these facts, the Court finds that Colvere and J&J are alter egos of GTI, as GTI, Colvere, and J&J have substantially identical business purposes,

ownership, management, supervision, and operations. As alter egos of GTI, Colvere and J&J are liable for GTI's delinquent benefits contributions. *Stardyne, Inc. v. NLRB*, 41 F.3d 141, 145 (3d Cir. 1994) ("[I]f two entities are found to be alter egos, a collective bargaining agreement covering one entity is automatically deemed to cover the other.").

Warren Giacomelli is personally liable for any contributions that GTI failed to make in connection with work performed after April 16, 2006. New Jersey law governs whether it is appropriate to pierce the corporate veil with respect to GTI, as New Jersey is GTI's state of incorporation and New Jersey is the state with the greatest interest in resolving this dispute. *See Las Vegas Sands Corp. v. ACE Gaming, LLC*, 713 F. Supp. 2d 427, 443 (D.N.J. 2010) (internal quotations omitted) ("A court applying New Jersey law could either look to the target entity's state of incorporation, or conduct [a] governmental interest analysis" to determine whether to piece the corporate veil). The State of New Jersey revoked GTI's corporate charter on April 16, 2006, but Warren Giacomelli continued the company's business operations until January 2009. *See* Exhibit K, ECF No. 9-15; Guy Decl. ¶ 8. Because Mr. Giacomelli continued to operate the business after the company's charter expired, he is personally liable under New Jersey law for all of the company's conduct after April 16, 2006. *See Leventhal v. Atlantic Rainbow Painting Co.*, 68 N.J. Super. 406, 413 (N.J. Super. Ct. App. Div. 1961) ("[P]ersons who carry on the business of a corporation or of a limited partnership association after the charter has expired, or after dissolution, become personally liable as general partners."); *see also Matawan Bank v. Matawan Tile Co.*, 2 N.J. 116, 126-29 (1949).

Second, it is clear that Plaintiffs have been prejudiced by Defendants' failure to respond to the Complaint. It has been over eight months since Defendants were served, and Defendants have failed to contact the Court or defend their case. As a result of Defendants' failure to respond, Plaintiffs have been unable to move forward in the litigation; they have incurred additional costs, including the costs of filing and briefing this motion; and they have been delayed in receiving relief. Third, Defendants are presumed to be culpable for their failure to answer where, as here, there is nothing before the Court to show that Defendants' failure to file an answer was not willfully negligent. *See Prudential Ins. Co. of America v. Taylor*, No. 08-2108, 2009 U.S. Dist. LEXIS 16531, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009). Accordingly, Plaintiffs are entitled to a default judgment and their motion is granted.

### C.     Damages

Section 502(g)(2) of ERISA provides that, upon a finding that an employer has violated section 515 of ERISA, a plan is entitled to (1) unpaid contributions, plus interest thereon, (2) liquidated damages at rates prescribed by the documents governing the plan, (3) reasonable attorney's fees and costs, and (4) such other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2)(D) (2011).

      The amount of damages for which GTI, Colvere, and J&J are liable is sum certain. In support of their claim for damages against GTI, Colvere, and J&J, the Funds submitted an affidavit from Fred Moss, a principal of Marshall & Moss Payroll Compliance Services, LLC, the Funds' auditor, as well as an affidavit from Charles R. Virginia ("Virginia Decl."), Plaintiffs' attorney.  The affidavits establish that GTI failed to make contributions in the principal amount of $144,907.93.  Moss Decl. ¶¶ 6-7.  The Funds are also owed $27,188.64 in liquidated damages (Moss Decl. ¶ 7; Virginia Decl. ¶ 3), and $71,243.12 in interest.  Moss Decl. ¶ 7; Virginia Decl. ¶¶ 3, 4.  Pursuant to Article IX, Section 3(M) of the CBA, the Funds are owed $21,673.75 for audit costs.  *See* Moss Decl. ¶ 10.  In addition, the Funds are owed attorneys' fees totaling $6,758.00 and litigation costs totaling $596.18.  Virginia Decl. ¶¶ 5, 12.  The Court finds the request for fees and costs to be reasonable.  Finally, it appears that GTI made a $10,000 payment to the Funds in March 2011.  Based on these figures, it appears that the total amount still owed to the Funds equals $262,367.62.

      The amount of damages for which Warren Giacomelli is liable is not sum certain. Mr. Giacomelli is liable for delinquent contributions only with regard to work performed after April 16, 2006.  Plaintiffs have not submitted any materials specifying the amount of damages owed after that date.  Accordingly, Plaintiffs will be given 30 days to submit a filing setting forth the amount of monetary damages owed by Mr. Giacomelli.  *See Comdyne*, 908 F.2d at 1149 (entry of default judgment where damages are not sum certain requires an application to the Court to prove damages).

### III.    CONCLUSION

      For the foregoing reasons, Plaintiffs' motion for default judgment is **GRANTED**. Judgment shall be entered against GTI, Colvere, and J&J, jointly and severally, for $262,367.62.  Plaintiffs shall have 30 days from the entry of this Court's Order to submit a filing setting forth the amount of damages for which Warren Giacomelli is personally liable.  An Order accompanies this Opinion.

    /s/ William J. Martini  
    **WILLIAM J. MARTINI, U.S.D.J.**